UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIA DITTES,

                        Plaintiff,

              v.

CHARGEAFTER USA, INC.,
CHARGEAFTER, INC., MARK DENMAN,
*individually*, and MICHAEL WILDE,
*individually*,

                       Defendants.

No.  24-CV-746 (RA)

<u>MEMORANDUM
OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

      Plaintiff Tia Dittes commenced this action against her former employers ChargeAfter, Inc. and ChargeAfter USA, Inc. (jointly "ChargeAfter"), and former supervisors Mark Denman and Michael Wilde (collectively "Defendants"), alleging violations of New York State Human Rights Law, New York City Human Rights Law, and New York Labor Law, as well as breach of her employment contract. *See* Notice of Removal Ex. A, ECF No. 3 ("Compl."). Pending before this Court is Defendants' motion to dismiss her Complaint. *See* Mot. to Dismiss, ECF No. 14. Plaintiff opposes, or, in the alternative, cross-moves for leave to amend. *See* Opp'n & Cross-Mot., ECF No. 22. For the reasons set forth below, the Court grants Defendants' motion to dismiss, but also gives Plaintiff the opportunity to amend.

## BACKGROUND

      Between December 1, 2021 and March 16, 2023, Dittes worked in the sales division of ChargeAfter, a consumer financing platform that connects retailers and lenders so as to allow retailers to obtain financing from lenders, while providing a back-end platform for these transactions. *See* Compl. ¶¶ 17, 20, 85; *see also* Denman Aff., ECF No. 16 ¶¶ 3–5. Dittes is an

Oklahoma resident and has lived there at all times pertinent to this action. *See* Denman Aff. ¶¶ 7–8; Compl. ¶ 2. ChargeAfter, a foreign business corporation based out of Israel, had an office in New York City and was registered to do business in the State. Compl. ¶¶ 3–10. Defendants Denman, Executive Vice President of Merchant Sales & Success, and Wilde, Senior Director of Sales, supervised Plaintiff's work at ChargeAfter. *Id.* ¶¶ 9–14, 21. Wilde lives in New York, while Denman resides in Texas. Notice of Removal ¶¶ 9–10; Denman Aff. ¶ 11.

In or about June 2022, Plaintiff was promoted from SMB Sales Executive to Mid-Market Sales Executive. Compl. ¶ 17–18. In August 2022, she was promoted again to Director of Sales. *Id.* ¶ 19. At all times, her income included both a base salary and any earned commissions. *Id.* ¶¶ 17–19.

In her new role as Director of Sales, Plaintiff was responsible for "calling on multimillion and multi-billion-dollar retailers to offer financing," as well as "phone/email/trade show outreach and follow-up" with companies in the "elective medical and retail industries." *Id.* ¶ 20. During this period, Plaintiff allegedly "secured meetings . . . on behalf of Defendants" with representatives at both Walmart and La-Z-Boy. *Id.* ¶ 23. In the event that ChargeAfter established accounts with either retailer, Plaintiff says she anticipated receiving a significant sign-on bonus and commission on revenue from these accounts. *Id.* ¶¶ 24–25.

In October 2022, however, Plaintiff alleges that Denman began "belittling [her] efforts" and engaging in an "abusive" pattern of behavior. *Id.* ¶¶ 30–32. Around the same time, Wilde "suddenly became more distan[t] from Plaintiff," removing Plaintiff from client calls and messages, and frequently making himself "unavailable for feedback" when Plaintiff sought him out. *Id.* ¶¶ 34–37. According to Plaintiff, there was a "'good ol' boys' culture" in the workplace

2

and Denman and Wilde "treat[ed] females with disdain." *Id.* ¶¶ 45, 67.

During this period, Plaintiff was removed from three accounts with large companies—Walmart, La-Z-Boy, and Samsung—and the accounts were "reassigned" to male employees. *Id.* ¶¶ 42, 51–53, 71–75. Despite purportedly "originat[ing]" and contributing to these accounts, she did not receive the signing bonuses and commissions she had anticipated. *Id.* ¶¶ 24–25, 73, 84–85. The male employee who took over the Samsung account "in its final stages," Plaintiff alleges, received a "$25,000 signing bonus" when the account closed and "a 15% commission on profits after the account went live." *Id.* ¶¶ 71–75. Plaintiff had anticipated receiving a comparable bonus and commission on the accounts with Walmart and La-Z-Boy. *Id.* ¶¶ 24–25. These bonuses and commissions instead went to male employees. *Id.* ¶¶ 42, 51–53, 75, 85–88.

Defendants terminated Plaintiff's employment on March 16, 2023. *Id.* ¶¶ 83–85. Plaintiff filed this action against Defendants on December 22, 2023, asserting claims under New York City Human Rights Law ("NYCHRL") for discrimination and creation of a hostile work environment (Count 1), *see* N.Y.C. Admin. Code § 8-107(1); retaliation (Count 2), *id.* § 8-107(7); supervisor liability (Count 3), *id.* § 8-107(13); and interference with protected rights (Count 4), *id.* § 8-107(19); under New York State Human Rights Law ("NYSHRL") for discrimination and creation of a hostile work environment (Count 5), *see* N.Y. Exec. Law § 296; retaliation (Count 6), *see id.* § 296(7); and aiding and abetting discriminatory conduct (Count 7), *id.* § 296(6); under New York Labor Law ("NYLL") for unequal pay (Count 8), *see* NYLL § 194; and retaliation (Count 9), *id.* § 215; and for breach of contract (Count 10). *Id.* ¶¶ 97–140.

After removing this action from New York Supreme Court, Defendants moved to dismiss the Complaint for lack of jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff opposed and cross-moved for leave to file an amended

complaint.

In support of their motion to dismiss, Defendants submitted the Affirmation of Defendant Denman. Denman attested that, as a ChargeAfter employee, Plaintiff's connection to New York State was minimal—she was based out of Oklahoma, served accounts throughout the United Sates, traveled to New York once or twice over the course of her employment, and did not have withholdings for New York State or City taxes taken from her paycheck. Denman Aff. ¶¶ 6–10; *see also id.* Ex. A, at 1. Although Plaintiff reported to Wilde, a New York resident, *id.* ¶ 11; Notice of Removal ¶ 10, Wilde reported directly to Denman, who is a Texas resident, Denman Aff. ¶ 11.

**LEGAL STANDARD**

## I.    Federal Rule of Civil Procedure 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . . ." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). A plaintiff must "allege facts that affirmatively and plausibly suggest that" the court has subject matter jurisdiction, and "courts need not credit a complaint's conclusory statements without reference to its factual context." *Id.*

"In reviewing a facial attack to the court's jurisdiction," this Court "draw[s] all facts— which [it] assume[s] to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "[W]here jurisdictional facts are placed in dispute," however, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU*, 343 F.3d at 627); *see also*

*Amidax Trading Grp.*, 671 F.3d at 145.

## II.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements, do not suffice." *Id.* In evaluating a Rule 12(b)(6) motion, a court must "construe[] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), but it need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

## I.    New York State and City Human Rights Law Claims

Having considered the parties' arguments, the Court dismisses Plaintiff's seven claims under NYSHRL and NYCHRL for lack of subject matter jurisdiction. "NYSHRL and NYCHRL . . . afford protections unavailable under federal law to discrimination plaintiffs who can plead and prove that the alleged discriminatory conduct had an impact within the state and city respectively." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam) (quoting

*Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 747 (N.Y. 2010)).[1] Where a non-resident plaintiff brings such claims, a court lacks subject matter jurisdiction "when the alleged discriminatory conduct did not have an impact on the plaintiff within New York City (regarding the NYCHRL) and within New York State (regarding the NYSHRL)." *Kraiem v. JonesTrading Institutional Servs. LLC*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020). Pleading a "tangential connection to the city and state," the New York Court of Appeals explained in *Hoffman v. Parade Publication*, is insufficient to satisfy the "impact" test. 933 N.E.2d at 748. Indeed, the *Hoffman* court found a plaintiff's pleadings insufficient where he had pled that he "attended quarterly meetings in New York City, that [defendant's company] was managed from—and all corporate contracts were negotiated through—the New York City office, and that defendants' decision to terminate him was made and executed in New York City." 933 N.E.2d at 745.

Plaintiff here does not reside in New York, nor does she allege that she worked within the State, or that the alleged discriminatory and retaliatory conduct had an impact within the City or State. *See* Compl. ¶ 2. While ChargeAfter has an office in New York City and is registered to do business within the State, *id.* ¶¶ 3–8, as in *Hoffman*, these connections are too tangential to establish a discriminatory impact for purposes of the NYSHRL and NYCHRL. Nor was Plaintiff's supervisor's presence in the State sufficient to establish a basis for jurisdiction. *See E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) ("[B]oth the New York Court of Appeals and the Court of Appeals for the Second Circuit have held that the impact requirement is not satisfied simply by pointing to frequent communication with a managing office in New York

---

[1] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

City and meetings there regarding local projects."); *see also Kingston v. Int'l Bus. Machines Corp.*, 135 N.Y.S.3d 9, 10 (N.Y. App. Div. 2020) (finding non-resident plaintiff's pleadings that he "reported to managers based in New York, served clients mostly based in New York, and travelled to New York State and City two to three times a year" insufficient to establish subject matter jurisdiction over NYSHRL and NYCHRL claims). The Denman Affidavit only bolsters the Court's conclusion that Plaintiff performed her work almost exclusively in Oklahoma and that the alleged discriminatory and retaliatory conduct had no more than a tangential impact within New York City or State. *See* Denman Aff. ¶¶ 6–10

In opposition, Plaintiff urges this Court to interpret NYCHRL and NYSHRL "liberally," Opp'n & Cross-Mot 12–13, noting that a New Jersey state decision interpreting the New Jersey Law Against Discrimination is "instructive" in this regard, *id.* at 14. This argument fails. Among other things, Plaintiff makes no effort to engage with the well-settled law, announced by the New York Court of Appeals and applied in this Circuit, that to state a claim under NYCHRL and NYSHRL a non-resident plaintiff must plead more than a "tangential connection to the city and state." *Hoffman*, 933 N.E.2d at 748; *see also King v. Aramark Servs. Inc.*, 96 F.4th 546, 557 (2d Cir. 2024).

Because Plaintiff has not plausibly alleged that the discriminatory and retaliatory conduct she alleges had an impact on her within New York—indeed, her Opposition does not even contend that she has—Plaintiff has failed to "allege facts that affirmatively and plausibly suggest that" that jurisdiction exists. *Conn. Parents Union*, 8 F.4th at 172. Accordingly, the Court dismisses Plaintiff's seven NYSHRL and NYCHRL claims for lack of subject matter jurisdiction. *Cf. King*, 96 F.4th at 558–59 (affirming dismissal of hostile work environment, discrimination, and retaliatory termination claims under NYSHRL because "any impact felt [in] New York was

tangential"); *E.E.O.C.*, 967 F. Supp. 2d at 865–66 (dismissing discrimination and retaliation claims brought under NYSHRL and NYCHRL for failure to meet *Hoffman*'s discriminatory impact test).

## II.    New York Labor Law

Plaintiff's claims under New York Labor Law are likewise dismissed. "New York recognizes the settled rule of statutory interpretation that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it." *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 730 N.Y.S.2d 46, 47 (N.Y. App. Div. 2001)). "As NYLL is silent on its extraterritorial application, courts in this district have held that it does not apply extraterritorially." *Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486 (RA), 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016) (collecting cases). Indeed, neither NYLL § 194 nor § 215, pursuant to which Plaintiff brings this action, "contains [any] indication that the provisions were intended to apply when the work in question is performed outside the state." *Rodriguez v KGA Inc.*, 64 N.Y.S.3d 11, 12 (N.Y. App. Div. 2017). Plaintiff also does not allege that she performed work within New York State or was "laboring" there when her claims arose. *O'Neill*, 968 F. Supp. 2d at 579 (explaining that "[t]he crucial issue" for the application of New York Labor Law "is where the employee is laboring"). Because Plaintiff's claims under NYLL §§ 194 and 215 are "premised almost exclusively on work performed outside of this State, [s]he has failed to state a claim under that statute" as well. *Kingston*, 135 N.Y.S.3d at 10; *see also Rodriguez*, 64 N.Y.S.3d at 13 ("Since these statutes do not expressly apply on an extraterritorial basis, plaintiffs' claims under these provisions, based on labor performed exclusively outside New York, do not state a cause of action under article 6 or article [7] of the New York Labor Law."). Plaintiff's New York

Labor Law claims are therefore dismissed.

### III.    Breach of Contract

Plaintiff's breach of contract claim must also be dismissed. "To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). To survive dismissal, however, "[t]he plaintiff must identify the essential terms of the contract, including a specific provision of the contract that was breached." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-cv-432 (JSR), 2021 WL 2667029, at *8 (S.D.N.Y. June 29, 2021); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (explaining that "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue"). "[S]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quoting *Berman v. Sugo L.L.C.*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Plaintiff pleads that she entered "a valid and enforceable employment agreement" with ChargeAfter, "which required Defendants to provide Plaintiff with consideration in the form of commissions." Compl. ¶ 137. Defendants breached this agreement, she says, because she did not receive commissions on accounts with Walmart, La-Z-Boy, and Samsung to which she had contributed. *Id.* ¶¶ 84–85, 139. The signing bonuses and commissions on revenue from these accounts allegedly went instead to the male employees to whom the accounts were reassigned. *Id.* ¶¶ 42, 51–53, 75, 85–88.

Even accepting these allegations as true, it is not evident from Plaintiff's Complaint that

this practice breached the terms of her contract. It may well be that Plaintiff's contract entitled her to receive a commission for each account that she originated or to which she contributed, but she has neither made such allegations in her Complaint nor submitted her contract for this Court's review. Indeed, Plaintiff nowhere alleges that she had a contractual right to remain on an account to which she had contributed or that she was entitled to any bonus or commission once the account had been reassigned. Because she has not "identif[ied] the essential terms of the contract," *Trustpilot Damages LLC*, 2021 WL 2667029, at *8, or the "provisions of the contract [that] were breached," *Wolff*, 171 F. Supp. 2d at 358, Plaintiff's pleadings are too "conclusory" to state a claim for breach of contract, *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 189.

In any event, even if she had stated a claim for breach of contract, Plaintiff abandoned it by failing to respond to Defendants' motion to dismiss it. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) (summary order) (affirming district court's dismissal of claims where plaintiff "abandoned" them by "fail[ing] to oppose [dismissal] in her opposition to [the] motion to dismiss"); *see also Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018). For all these reasons, the Court dismisses Plaintiff's breach of contract claim.

## IV.    Amendment

Finally, Plaintiff seeks leave to amend her Complaint. Defendants oppose, asserting that amendment would be futile because the new allegations set forth in her proposed amended complaint also merit dismissal. *See* Reply 4, ECF No. 23.

Whether to grant or deny amendment is "within the sound discretion of the district court." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[I]t is rare," however, "that such leave should be denied, especially when there has been no prior amendment," *Ricciuti*

*v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *overruled on other grounds by* 544 U.S. 197 (2005), and a "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2).

The Court hereby grants Plaintiff's motion to amend her Complaint. If she elects to do so, she must attempt to address each basis for dismissal that the Court raised above, as well as the other grounds Defendants have raised in their motion papers.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted. Plaintiff shall have the opportunity to amend the Complaint within thirty days, provided she has a good faith basis to do so. The Clerk of Court is respectfully directed to close the motions pending at ECF Nos. 14 and 22.

SO ORDERED.

Dated:     July 17, 2025
           New York, New York

_____
           Ronnie Abrams
           United States District Judge